HUTCHINS CAR ROOFING CO. v. STANDARD RY. EQUIPMENT CO. et al.

STANDARD RY. EQUIPMENT CO. et al. v. HUTCHINS CAR ROOFING CO.

(Circuit Court of Appeals, Seventh Circuit. March 8, 1919. Rehearing Denied. May 6, 1919.)

Nos. 2556, 2570.

1. PATENTS ⬅328—VALIDITY AND INFRINGEMENT—CAR ROOF.
    The Latta & Thompson patent, No. 1,058,989, for a flexible plate car roof, *held* not anticipated, valid, and infringed.
2. PATENTS ⬅328—INFRINGEMENT—CAR ROOF.
    The Souder patent, No. 763,438, and the Murphy patent, No. 946,823, each for a car roof, *held* not infringed.

Cross-Appeals from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit by the Hutchins Car Roofing Company against the Standard Railway Equipment Company, the Western Steel Car & Foundry Company, the Union Pacific Company, and the P. H. Murphy Company, with cross-bill by the Murphy Company. From the decree, both parties appeal. Reversed on complainant's appeal, and affirmed on cross-appeal.

Cross-appeals from decree dismissing plaintiff's bill seeking an injunction to restrain appellees from infringing patent No. 1,058,989, to Latta & Thompson, and also dismissing cross-bill of P. H. Murphy Company, in which an injunction was sought to restrain appellant from infringing Souder patent, No. 763,438, and Murphy patent, No. 946,823.

Edward Rector and Frank Parker Davis, both of Chicago, Ill., for Hutchins Car Roofing Co.

James A. Carr, of St. Louis, Mo., and Robert H. Parkinson, of Chicago, Ill., for Standard Ry. Equipment Co.

Before BAKER and EVANS, Circuit Judges.

EVANS, Circuit Judge. Plaintiff, as the owner of patent No. 1,-058,989, granted to Latta & Thompson, herein called L. & T., sought damages and a restraining order against the defendants, who were either the users, manufacturers, or sale agents of car roofs alleged to infringe complainant's patent. Defendants denied infringement and disputed the validity of the patent. Appellee P. H. Murphy Company, counterclaimed, seeking relief against appellant for alleged violation of the Souder patent, No. 763,438, dated June 28, 1904, and the Murphy patent, No. 946,823, dated January 18, 1910. To this cross-bill appellant filed answer, denying infringement. Appellees also asserted that P. H. Murphy made and sold cars such as disclosed in the appellant's patent more than two years prior to the date of the L. & T. application.

[1] Upon the various issues thus presented the District Judge found—

---

"the Latta & Thompson patent valid, and prior in time to Murphy, 946,823 (in suit); plaintiff having carried back the effective date of invention, by proof beyond reasonable doubt, to the time of the disclosure of the pen and ink sketch, April, 1906. Latta & Thompson patent not infringed. Souder patent valid, but not infringed. Murphy patent in suit, No. 946,823, valid, not infringed, and inferior in date to the Latta & Thompson invention."

From this decree both parties appeal; appellees on their cross-appeal attacking particularly that part of the decree which holds the L. & T. patent valid.

In view of the action taken by P. H. Murphy Company in reference to its patent, herein called the Murphy patent, a consideration of the finding of the court on priority first challenges our attention. It is appellant's urge that although the L. & T. application was not filed until May 29, 1907, nine days later than W. P. Murphy made application for his patent, yet nevertheless L. & T. disclosed their combination by a pen and ink sketch as early as April, 1906. In support of the Murphy patent it was claimed that in the fall of 1905 sketches were made disclosing the structure later embodied in L. & T. patent.

The District Judge found in favor of appellant on this issue. Our examination of the evidence does not warrant a disturbance of this finding.

The significance of this finding is appreciated when we examine the file wrapper in respect to the Murphy patent. After L. & T. secured their patent, Murphy made application to the Patent Office to secure a reissue patent covering some of the claims of the L. & T. patent now in issue. The statements there made under oath by Mr. Murphy are significant. They cannot be reconciled with appellees' present position in reference to the state of the prior art.

Mr. Murphy, succeeding his father, was a large manufacturer of car roofs, and thoroughly familiar with the various kinds in use. He had obtained some 50 patents upon car roofs and had experience in contested cases involving questions arising out of prior art citations. He was necessarily familiar with what has been termed the Mexican car roof. After reading the L. & T. patent, he sought a reissue patent to himself, thereby attempting to obtain a monopoly upon certain claims now in dispute. In his affidavit in support of this reissue application he said:

"That, prior to deponent's invention, there were three general types of metal car roofs, namely, inside metal roofs, outside metal roofs, and all metal roofs."

"That deponent is informed and believes that the claims of said Latta & Thompson patent dominate deponent's patent No. 946,823, and the structure therein shown, and thereby deprive deponent and his assignee of the benefits that should inure to them by reason of deponent being the true and first inventor of the subject-matter of said claims; and that according to the decision of said Commissioner of Patents in the matter of said Latta & Thompson application, most of the claims of said Latta & Thompson patent were patentable to this deponent, and should have been incorporated in his patent aforesaid."

He also sought to amend his specifications by including, among other things, the following:

"My plate car roof is as a whole flexible, because the sheets or plates thereof are independently, freely, and movably supported on the carlines or skeleton frame, and are secured thereto as above stated."

Murphy's claim to a reissue patent covering these claims was vigorously pressed before the department. Notwithstanding these statements, appellees now contend that the patent to L. & T. is invalid, because the prior art, and particularly the Mexican Central car roofs, clearly disclosed all that is covered by the claims in suit. It is difficult to appreciate how Murphy can expect the court to give serious heed to the contentions now made that directly contradict his sworn statement when seeking a similar grant from the Patent Office. Prior to any controversy between Murphy and L. & T., the Commissioner of Patents, in granting the patent, said:

"These applicants are admittedly the first ones to provide a designedly flexible all metal car roof."

This finding and observation of the Commissioner of Patents is in perfect harmony with the claim of Mr. Murphy that on May 20, 1907, there were no such car roofs in existence. Entertaining the belief that his application, which was nine days ahead of L. & T., would entitle him to priority over the latter's patent, he under oath set forth the state of the prior art in such a way as to necessarily seriously challenge any reflection now made upon that assertion.

Appellees, having failed to secure this reissue patent, now assert that the prior art was full of patents for car roofs of the type which L. & T. monopolized by their patent. But notwithstanding this inconsistency we have carefully examined the prior art, to ascertain whether the patent to L. & T. was in fact valid. In considering this question, a brief examination of the structure in question will be enlightening. In the specifications of the L. & T. patent we find the following:

"Generally speaking, the invention relates to a car roof possessing adequate flexibility and required roofing rigidity. As components of the structure there are rigid or load-supporting metallic plates, constituting in the main the primary roofing elements, and associated with these plates are suitable means for forming weather-proof joints between the plates, which means are so constructed and arranged that, while the roof will be maintained weather-tight, it will still possess the requisite rigidity and flexibility to permit the weaving actions of the structure."

In other words, we have what in ordinary building parlance might be termed the framework, consisting of the transverse beams or carlines of steel, the longitudinal beams or purlins, the ridge pole or ridge purlin, which skeleton frame, thus composed of carlines and purlins, leave rectangular spaces of considerable area over the top of the car. These are covered by heavy gauge steel plates, there being a series of these on each side, each sheet completely covering the space between the carlines from the ridge to the eaves, and these sheets are in turn flanged downwardly at the eaves and upwardly along the side and at the ridge. Each sheet, excepting the end ones, lies in between two of the carlines, with the side flanges adjacent to the upstanding flanges of these carlines. The eaves flange of the sheet occupies the rabbeted

portion of the wooden strip or fascia, which is secured against the side of the car, and this down-turned flange of the sheet may be, and in the preferred form described in the patent is, nailed to the fascia.

The essence of the invention is found in the above-disclosed relationship between the skeleton frame and the sheets or plates, and particularly the relationship between these sheets or plates and the carlines. In addition thereto, and as a part of the carlines in controversy, appellant provided an important element in the combination, being the means for rendering waterproof the joints between the plates or sheets and the carlines. A cap is placed over each joint so as to embrace the flanges of the two adjacent sheets or plates, and the intervening sheets or plates of the foot flange $V$ rests upon the sheets. Herewith is submitted a drawing of a car top showing the skeleton made up of the purlins, $A$, the ridge pole or ridge purlin, $B$, the carlines, $C$, the sheets of steel, $L$, the side, $E$, the cap, $T$, with the foot flange $V$. The manner in which the cap, as well as the plates, is attached to the fascia, will be referred to later.

The claims under consideration are:

"1. A flexible plate car roof, comprising a skeleton frame, load sustaining rigid metallic roofing plates spanning open spaces of said frame, and independently freely movably supported thereon and secured thereto, and weather proofing means between adjacent plates permitting said free independent movement.

"2. A flexible plate car roof, comprising carlines, load sustaining rigid metallic roofing plates spanning the open spaces between said carlines and independently freely movable therebetween, and weather-proofing means between adjacent plates, supported thereby independent of the carlines and permitting the independent movement of the plates."

"7. A flexible plate car roof, comprising side plates, metallic carlines connecting the side plates, purlins connecting the carlines, a covering composed of exposed rigid load supporting metal roofing plates adjacent to but spaced from the carlines, caps over the carlines and plate flanges, said caps being spaced from the plate flanges, and lateral foot flanges on the bottom of the caps resting on the plate."

; "13. In a flexible plate car roof, an open frame comprising carlines, exposed rigid load supporting metal roofing plates between the carlines having marginal edge flanges adjacent the carlines and caps over the carlines having side parts spaced from the carlines and plate flanges and having their lower edges arranged adjacent the plates to form a weathering joint therebetween."

In considering the state of the prior art as bearing upon appellant's asserted claim to novelty, it must be admitted that metal roofs as such were old, having been used over wooden roofs, under wooden roofs, and without the support of wooden roofs. The Mexican Central car roofs and the Souder patents well mark the advanced state of the art so far as this patent is concerned. The Mexican Central roof had long been in use, being built in the United States for the Mexican Central Railroad and interchanged with other roads in the United States. Admittedly they were a part of the prior art.

They are distinguishable from the patent in suit, in that they were not "designedly flexible," and there was an absence of weather-proof means found in two of the claims under consideration. It seems their substructure was somewhat like the one under consideration, consisting of a ridge pole, carlines, and purlins. This substructure was covered by corrugated metal roofing sheets extending from eave to eave. The joints between the sheets were formed by merely overlapping the side eaves of the adjacent sheets. At each side of the car there is a strip to clamp the eave ends to the frame. This strip is secured to the side plate by several lag screws extending through the clamping strip and the roofing sheets into the side plate. The sheet was not only fastened securely at the ends, but it was prevented from moving relatively to the substructure by the screws that extended from the clamping strips down through the sheets in the side plates. Flexibility was obtainable only when the holes for the lag screws were torn and much larger than the screws. Likewise, so long as the flanges were in fact waterproof, there was little or no flexibility at this point. Flexibility was obtained here only when the roof was leaky.

The Souder patent related to—

"fireproof or metallic roofs for railway cars or other structures, and had for its object a roof applied without the use of nails or screws and the several parts put together and secured without solder."

. Its merits, as set forth in the patent, were:

"The roof thus constructed is without solder being applied to any of its seams or joints and without nails or screws to secure it to the car, and the sections are interchangeable, and any section may be renewed without interfering with its adjacent section."

While doubtless covering a metallic roof, it is evident that rigidity rather than flexibility was sought. The metal sheets were attached at three of the four sides of the parallelogram formed by them, which of course necessarily prevented that relative movement which was the aim and object of L. & T. It is also noticeable that the roof did not call for purlins.

Other citations in the prior art need not be specially considered, for they do not as nearly approach the dignity of an anticipation as either of the two just considered.

The opposing counsel do not agree upon the meaning of the word "independently," as used in the phrase in claim 1, "and independently freely movably supported thereon and secured thereto," and as used in claim 2 in the phrase "and independently freely movable therebetween" and this difference of opinion leads to a difference in conclusions both as to validity and infringement. Appellees contend that this phrase, fairly construed, describes plates that move independently and freely in relation to each other, while appellant insists that this language describes a structure wherein the plates move freely and independently of the substructure as well as independently of the weather-proofing caps. An examination of the entire patent, the file wrapper disclosures, and the ruling of the Commissioner in allowing applicant's claims, convinces us that appellant's construction of this language is the correct one; that it was appellant's roof as an entirety that was to be "designedly flexible"; that the roofing plates were to be "independently freely movable" in relation to the substructure and the weatherproof caps.

Considering each of claims 1 and 2 as an integer, and giving full effect to each element of the combination, we conclude they are valid. This conclusion on the question of validity is confirmed by the fact that the various types of car roofs in actual use on the cars were shown the District Judge, who examined them all carefully, and thereupon found the claims above quoted to be valid.

Claims 7 and 13 are narrower; a cap to prevent leakage appearing as an added element in the combination. Both claims Murphy sought in his reissue application; claim 13, heretofore quoted, being inserted in the reissue application verbatim, and claim 7 almost verbatim. Both were patentable, according to Murphy, when he was prosecuting his application for the reissue patent. Our examination of the prior art citations fails to disclose a roof that challenges the accuracy of this conclusion. In neither of these claims does the phrase "independently freely movable" exist to vex us. We agree with the District Judge that both these claims are valid.

*Infringement.* Claims 1 and 2: Appellees' roof does not embody the specific form illustrated in the L. & T. patent. But is it not the equivalent thereof? Broadly speaking, L. & T.'s invention covered a combination that resulted in a roof having a rigid load support, metal roof plates that moved freely in relation to the skeleton frame to which they were attached, so as to permit distortion to which car roofs are necessarily subject, without buckling or other injury to the roof plates. True, the elements as described in the combination, not the results, must measure the limits of the claims. But these elements should also be read with the desired and attained results as a background, rather than be measured by the specific or preferred form described in the specifications. The "preferred structure" or the specific description of the combination found in the specifications, while no doubt instructive in construing claims, is too frequently erroneously assumed to measure the limitations of the patentee's invention.

In the present case the illustrated metal roof plates consisted of two series, one covering but half of the roof, from eaves to ridge. The

outer ends of the plates of each series are bent down over the eaves and securely attached to the framework; both outer ends thereby becoming rigidly secured to the same common rigid member of the framework of the car. At the inner ends of the roof plates, at the ridge of the roof, there is no attachment. If the plates were secured to the framework at the inner as well as outer edges, they would necessarily respond to any distortions of the framework, and would be quickly distorted and damaged. To attach the plates at the inner edge, leaving the outer edge unattached, would not be such a change as would defeat infringement.

But appellees not only attach the plates at the ridge of the car, but they extend the plate from eave to eave. If attachment of the plates at the ridge of the roof does not avoid infringement, it is not clear how the mere use of a single plate extending from eave to eave, in place of two plates attached at the ridge, would avoid infringement. In fact, the two plates, when commonly attached to the ridge pole, would for all practical purposes constitute but a single plate. Nor would it matter whether the attachment was by a single series of bolts or a double series.

But a still better answer, perhaps, to appellees' claim of noninfringement, due to the difference in place of attachment, or the presence of one instead of a pair of plates, lies in the fact that neither claim specifically calls for two series of plates, nor requires their attachment to the frame at the eaves, instead of the ridge.

Evidence to support the finding that claims 7 and 13 are not infringed is nowhere to be found in the record. That some of appellees' roofs infringe these two claims we think is clear. We find all four claims infringed.

[2] It is unnecessary to consider Murphy's counterclaims. No infringement of either patent appears.

The decree is reversed, with costs, with directions to enter a decree enjoining defendants from further infringing claims 1, 2, 7, and 13 of L. & T. patent, and for damages for past infringements.

As to No. 2570 the decree is affirmed.